UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                       Case No. 21-CR-233 (LA)

DAVID O. BRAEGER,

    Defendant.

## PLEA AGREEMENT

1.    The United States of America, by its attorneys, Gregory J. Haanstad, United States Attorney for the Eastern District of Wisconsin, and Julie F. Stewart and Zachary J. Corey, Assistant United States Attorneys, and the defendant, David O. Braeger, individually and by attorneys Dennise Moreno and Craig Albee, pursuant to Rule 11 of the Federal Rules of Criminal Procedure, enter into the following plea agreement:

### CHARGES

2.    The defendant has been charged in a ten-count indictment, which alleges violations of Title 18, United States Code, Sections 1341, 1343, 1344, and 1957. After pretrial motions, seven counts, alleging violations of Title 18, United States Code, Sections 1341, 1343, and 1957 remain.

3.    The defendant has read and fully understands the charges contained in the indictment. He fully understands the nature and elements of the crime with which he has been charged, and the charge and the terms and conditions of the plea agreement have been fully explained to him by his attorney.

4. The defendant voluntarily agrees to plead guilty to Count Five as set forth in full as follows:

**Background Allegations**

**THE GRAND JURY FURTHER CHARGES THAT:**

1. Beginning by at least August 2017, and continuing through at least December 2018, in the State and Eastern District of Wisconsin and elsewhere,

**DAVID OSCAR BRAEGER,**

with intent to defraud, knowingly devised, participated in, and carried out a scheme to defraud (the "Blue Star scheme"), to obtain money and property by materially false and fraudulent pretenses, representations, promises, and omissions.

2. As part of the Blue Star scheme, Braeger formed Blue Star Automotive Fund, L.P., through which he offered and sold unregistered Limited Partnership Shares in an entity that was ostensibly formed as an investment vehicle to make loans to an Arizona-based auto dealer doing business as Onyx Motorsports.

3. To solicit investments in Blue Star from individuals, Braeger made false and misleading material statements and omissions in PPMs and email communications, which investors relied upon in providing funds to Braeger.

4. Instead of utilizing the investors' funds for the purposes that Braeger represented in the PPMs and emails, Braeger defrauded the investors by, among other things:

    a. making payments to other investors under the guise of legitimate investment returns, commonly referred to as Ponzi-scheme payments, which continued the Blue Star scheme by avoiding detection of fraudulently used funds;

    b. paying for personal expenses such as utilities, restaurant meals, retail shopping, and vehicles; and

c. investing in other personal business ventures unrelated to the PPM proposals for Blue Star, such as buying and operating the Silver Spring House restaurant in Glendale, Wisconsin.

5. Braeger's Blue Star Scheme included material omissions, namely, failing to disclose to the investors that Braeger used and intended to use the money that they invested to pay for his personal expenses, repay other investors, and make other unrelated investments.

6. During the period of the Blue Star Scheme, Braeger resided primarily in the Eastern District of Wisconsin.

7. Braeger's Blue Star Scheme was effectuated through a variety of federally insured banks, including BMO Harris Bank.

8. BMO Harris Bank's servers are located in Canada.

9. All of the transactions that constituted the execution of Braeger's scheme caused BMO Harris Bank to send wire communications between the Eastern District of Wisconsin and Canada, thus resulting in interstate and international wire communications.

10. As a result of the Blue Star scheme, Braeger fraudulently obtained, and attempted to obtain, over $5,500,000.

## COUNT FIVE

(Mail Fraud, 18 U.S.C. § 1341)

**THE GRAND JURY FURTHER CHARGES THAT:**

11. All of the allegations set forth in paragraphs 1-10 above are hereby incorporated in support of the following charge as if set forth here in full.

12. From on or about August 8, 2017, through on or about August 10, 2017, in the State and Eastern District of Wisconsin and elsewhere,

DAVID OSCAR BRAEGER,

with the intent to defraud, knowingly devised and participated in, the above-described Blue Star scheme to obtain money and property by materially false and fraudulent pretenses, representations, promises, and omissions.

13. For the purpose of executing and attempting to execute the Blue Star scheme, Braeger knowingly caused to be delivered by a private and commercial interstate carrier, specifically by Federal Express, an investment check of $100,000 from R.G. in Fort Wayne, Indiana, to Braeger in Mequon, Wisconsin.

All in violation of Title 18, United States Code, Section 1341.

5. The defendant acknowledges, understands, and agrees that he is, in fact, guilty of the offense described in paragraph 4. The parties acknowledge and understand that if this case were to proceed to trial, the government would be able to prove the following facts beyond a reasonable doubt. The defendant admits that these facts are true and correct and establish his guilt beyond a reasonable doubt:

> In 2017, David Braeger formed Blue Star Automotive Fund, LP ("Blue Star"). From August 2017 to December 2018, Braeger sold limited partnership shares of Blue Star to 27 investors for a total of $5.5 million. To solicit investment in Blue Star, and as part of his knowingly devising and participating in a scheme to defraud, Braeger, with the intent to defraud, made materially false misrepresentations to potential investors both in the private placement memoranda as well as in PowerPoint presentations and email communications used to solicit investors. For example, Braeger made materially false representations about other entities and individuals who had invested or planned to invest in Blue Star. Braeger also made materially false representations about the way in which investor monies would be, and were, spent. For example, Braeger represented, in both the private placement memoranda and email communications that investor money would be used primarily to fund loans to Blue Star's auto dealer partner, Onyx Motorsports. Although Blue Star did loan approximately $2.4 million to Onyx, Braeger misappropriated other portions of investor money he received, using the funds for unauthorized purposes. For example, Braeger purchased vehicles for himself and his family and used investor money to make payments to individuals who had invested in Braeger's other business ventures. Those expenditures were not authorized by the investors and were outside the scope of Braeger's representations to investors about how Blue Star would operate. For the purpose of carrying out the

4

scheme to defraud, Braeger caused R.G. to use Federal Express to mail an investment check from Indiana to Wisconsin.

In addition to the scheme involving Blue Star, Braeger solicited and received $100,000 from J.P. to invest in funding an arbitration related to a Ugandan energy plant. After receiving J.P.'s $100,000 investment, which was provided based on Braeger's materially false representations that the money would be used to fund the arbitration project, Braeger used portions of those funds for unauthorized purposes. Those unauthorized expenses included, but were not limited to, paying for personal legal fees and purchasing a vehicle. To carry out this fraud, Braeger caused the transfer of wire communications in interstate commerce.

This information is provided for the purpose of setting forth a factual basis for the plea of guilty. It is not a full recitation of the defendant's knowledge of, or participation in, this offense.

## PENALTIES

6. The parties understand and agree that the offense to which the defendant will enter a plea of guilty carries the following maximum term of imprisonment and fine: 20 years and $250,000. The offense also carries a mandatory special assessment of $100, and a maximum of five years of supervised release. The parties further recognize that a restitution order may be entered by the court. The parties' acknowledgments, understandings, and agreements with regard to restitution are set forth in paragraph 28 of this agreement.

7. The defendant acknowledges, understands, and agrees that he has discussed the relevant statutes as well as the applicable sentencing guidelines with his attorney.

## DISMISSAL OF REMAINING COUNTS

8. The government agrees to move to dismiss the remaining counts of the indictment at the time of sentencing.

## ELEMENTS

9. The parties understand and agree that in order to sustain the charge of mail fraud as set forth in Count Five, the government must prove each of the following propositions beyond a reasonable doubt:

> First, That the defendant knowingly devised and participated in a scheme to defraud, as described in the Indictment;
>
> Second, That the defendant did so with the intent to defraud;
>
> Third, The scheme to defraud involved a materially false or fraudulent pretense, representation, or promise; and
>
> Fourth, That for the purpose of carrying out the scheme or attempting to do so, the defendant caused the use of a private or commercial interstate carrier in the manner charged.

## SENTENCING PROVISIONS

10. The parties agree to waive the time limits in Fed. R. Crim. P. 32 relating to the presentence report, including that the presentence report be disclosed not less than 35 days before the sentencing hearing, in favor of a schedule for disclosure, and the filing of any objections, to be established by the court at the change of plea hearing.

11. The parties acknowledge, understand, and agree that any sentence imposed by the court will be pursuant to the Sentencing Reform Act, and that the court will give due regard to the Sentencing Guidelines when sentencing the defendant.

12. The parties acknowledge and agree that they have discussed all of the sentencing guidelines provisions which they believe to be applicable to the offense set forth in paragraph 4. The defendant acknowledges and agrees that his attorney in turn has discussed the applicable sentencing guidelines provisions with him to the defendant's satisfaction.

6

13. The parties acknowledge and understand that prior to sentencing the United States Probation Office will conduct its own investigation of the defendant's criminal history. The parties further acknowledge and understand that, at the time the defendant enters a guilty plea, the parties may not have full and complete information regarding the defendant's criminal history. The parties acknowledge, understand, and agree that the defendant may not move to withdraw the guilty plea solely as a result of the sentencing court's determination of the defendant's criminal history.

## Sentencing Guidelines Calculations

14. The defendant acknowledges and understands that the sentencing guidelines recommendations contained in this agreement do not create any right to be sentenced within any particular sentence range, and that the court may impose a reasonable sentence above or below the guideline range. The parties further understand and agree that if the defendant has provided false, incomplete, or inaccurate information that affects the calculations, the government is not bound to make the recommendations contained in this agreement.

## Relevant Conduct

15. The parties acknowledge, understand, and agree that pursuant to Sentencing Guidelines Manual § 1B1.3, the sentencing judge may consider relevant conduct in calculating the sentencing guidelines range, even if the relevant conduct is not the subject of the offense to which the defendant is pleading guilty.

## Base Offense Level

16. The parties agree to recommend to the sentencing court that the applicable base offense level for the offense charged in Count Five is 7 under Sentencing Guidelines Manual § 2B1.1(a)(1).

17.  If the sentencing court determines that the defendant does not have any criminal history points, and otherwise meets all of the criteria listed in Sentencing Guidelines Manual § 4C1.1(a), then the government will agree to recommend to the sentencing court that a 2-level decrease is applicable pursuant to § 4C1.1(a) of the Sentencing Guidelines.

### Specific Offense Characteristics

18.  The government agrees to recommend to the sentencing court that a 16-level increase for a loss in excess of $1,500,000, but less than $3,500,000, under Sentencing Guidelines Manual § 2B1.1(b)(1)(I) is applicable to the offense level for the offense charged in Count Five. The parties agree to recommend to the sentencing court that a 2-level increase for conduct impacting more than 10 victims under Sentencing Guidelines Manual § 2B1.1(b)(2)(a)(i) is applicable to the offense level for the offense charged in Count Five.

### Acceptance of Responsibility

19.  The government agrees to recommend a two-level decrease for acceptance of responsibility as authorized by Sentencing Guidelines Manual § 3E1.1(a), but only if the defendant exhibits conduct consistent with the acceptance of responsibility. The defendant acknowledges, understands, and agrees that conduct consistent with the acceptance of responsibility includes but is not limited to the defendant's voluntary identification and disclosure to the government of any and all actual or potential victims of the offense prior to sentencing. In addition, if the court determines at the time of sentencing that the defendant is entitled to the two-level reduction under § 3E1.1(a), the government agrees to make a motion recommending an additional one-level decrease as authorized by Sentencing Guidelines Manual § 3E1.1(b) because the defendant timely notified authorities of his intention to enter a plea of guilty.

### Sentencing Recommendations

20. Both parties reserve the right to provide the district court and the probation office with any and all information which might be pertinent to the sentencing process, including but not limited to any and all conduct related to the offense as well as any and all matters which might constitute aggravating or mitigating sentencing factors.

21. Both parties reserve the right to make any recommendation regarding any other matters not specifically addressed by this agreement.

22. The government agrees to recommend a sentence of no greater than 30 months.

### Court's Determinations at Sentencing

23. The parties acknowledge, understand, and agree that neither the sentencing court nor the United States Probation Office is a party to or bound by this agreement. The United States Probation Office will make its own recommendations to the sentencing court. The sentencing court will make its own determinations regarding any and all issues relating to the imposition of sentence and may impose any sentence authorized by law up to the maximum penalties set forth in paragraph 7 above. The parties further understand that the sentencing court will be guided by the sentencing guidelines but will not be bound by the sentencing guidelines and may impose a reasonable sentence above or below the calculated guideline range.

24. The parties acknowledge, understand, and agree that the defendant may not move to withdraw the guilty plea solely as a result of the sentence imposed by the court.

### FINANCIAL MATTERS

25. The defendant acknowledges and understands that any and all financial obligations imposed by the sentencing court are due and payable in full upon entry of the judgment of conviction. The defendant further understands that any payment schedule imposed by the sentencing court shall be the minimum the defendant is expected to pay and that the

9

government's collection of any and all court imposed financial obligations is not limited to the payment schedule. The defendant agrees not to request any delay or stay in payment of any and all financial obligations. If the defendant is incarcerated, the defendant agrees to participate in the Bureau of Prisons' Inmate Financial Responsibility Program, regardless of whether the court specifically directs participation or imposes a schedule of payments.

26. The defendant agrees to provide to the Financial Litigation Unit (FLU) of the United States Attorney's Office, at least 30 days before sentencing, and also upon request of the FLU during any period of probation or supervised release imposed by the court, a complete and sworn financial statement on a form provided by FLU and any documentation required by the form. The defendant further agrees, upon request of FLU whether made before or after sentencing, to promptly: cooperate in the identification of assets in which the defendant has an interest, cooperate in the liquidation of any such assets, and participate in an asset deposition.

### Special Assessment

27. The defendant agrees to pay the special assessment in the amount of $100 prior to or at the time of sentencing.

### Restitution

28. The defendant agrees to pay restitution as ordered by the court. The parties acknowledge and understand that the government will recommend to the sentencing court that the defendant pay restitution in the amount of $2,535,203.20. The parties acknowledge and understand that the defendant will not join in this recommendation. The defendant understands that because restitution for the offense is mandatory, the amount of restitution shall be imposed by the court regardless of the defendant's financial resources. The defendant agrees to cooperate in efforts to collect the restitution obligation. The defendant understands that imposition or

10

Case 2:21-cr-00233-LA    Filed 07/09/24    Page 10 of 16    Document 65

payment of restitution will not restrict or preclude the filing of any civil suit or administrative action.

## DEFENDANT'S WAIVER OF RIGHTS

29. In entering this agreement, the defendant acknowledges and understands that he surrenders any claims he may have raised in any pretrial motion, as well as certain rights which include the following:

- a. If the defendant persisted in a plea of not guilty to the charges against him, he would be entitled to a speedy and public trial by a court or jury. The defendant has a right to a jury trial. However, in order that the trial be conducted by the judge sitting without a jury, the defendant, the government and the judge all must agree that the trial be conducted by the judge without a jury.

- b. If the trial is a jury trial, the jury would be composed of twelve citizens selected at random. The defendant and his attorney would have a say in who the jurors would be by removing prospective jurors for cause where actual bias or other disqualification is shown, or without cause by exercising peremptory challenges. The jury would have to agree unanimously before it could return a verdict of guilty. The court would instruct the jury that the defendant is presumed innocent until such time, if ever, as the government establishes guilt by competent evidence to the satisfaction of the jury beyond a reasonable doubt.

- c. If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all of the evidence, whether or not he was persuaded of defendant's guilt beyond a reasonable doubt.

- d. At such trial, whether by a judge or a jury, the government would be required to present witnesses and other evidence against the defendant. The defendant would be able to confront witnesses upon whose testimony the government is relying to obtain a conviction and he would have the right to cross-examine those witnesses. In turn the defendant could, but is not obligated to, present witnesses and other evidence on his own behalf. The defendant would be entitled to compulsory process to call witnesses.

- e. At such trial, defendant would have a privilege against self-incrimination so that he could decline to testify and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify on his own behalf.

11

Case 2:21-cr-00233-LA    Filed 07/09/24    Page 11 of 16    Document 65

30. The defendant acknowledges and understands that by pleading guilty he is waiving all the rights set forth above. The defendant further acknowledges the fact that his attorney has explained these rights to him and the consequences of his waiver of these rights. The defendant further acknowledges that as a part of the guilty plea hearing, the court may question the defendant under oath, on the record, and in the presence of counsel about the offense to which the defendant intends to plead guilty. The defendant further understands that the defendant's answers may later be used against the defendant in a prosecution for perjury or false statement.

31. The defendant acknowledges and understands that he will be adjudicated guilty of the offense to which he will plead guilty and thereby may be deprived of certain rights, including but not limited to the right to vote, to hold public office, to serve on a jury, to possess firearms, and to be employed by a federally insured financial institution.

32. The defendant knowingly and voluntarily waives all claims he may have based upon the statute of limitations, the Speedy Trial Act, and the speedy trial provisions of the Sixth Amendment. The defendant agrees that any delay between the filing of this agreement and the entry of the defendant's guilty plea pursuant to this agreement constitutes excludable time under the Speedy Trial Act.

33. Based on the government's concessions in this agreement, the defendant knowingly and voluntarily waives his right to appeal his sentence in this case and further waives his right to challenge his conviction or sentence in any post-conviction proceeding, including but not limited to a motion pursuant to 28 U.S.C. § 2255, except insofar as his sentence includes a term of imprisonment of greater than 30 months, in which case this waiver does not apply to his right to appeal his sentence. As used in this paragraph, the term "sentence" means any term of imprisonment, term of supervised release, term of probation, supervised release condition, fine,

forfeiture order, and restitution order. The defendant's waiver of appeal and post-conviction challenges includes the waiver of any claim that (1) the statute or Sentencing Guidelines under which the defendant is convicted or sentenced are unconstitutional, and (2) the conduct to which the defendant has admitted does not fall within the scope of the statute or Sentencing Guidelines. This waiver does not extend to an appeal or post-conviction motion based on (1) any punishment in excess of the statutory maximum, (2) the sentencing court's reliance on any constitutionally impermissible factor, such as race, religion, or sex, (3) ineffective assistance of counsel in connection with the negotiation of the plea agreement or sentencing, or (4) a claim that the plea agreement was entered involuntarily.

## Further Civil or Administrative Action

34. The defendant acknowledges, understands, and agrees that the defendant has discussed with his attorney and understands that nothing contained in this agreement, including any attachment, is meant to limit the rights and authority of the United States of America or any other state or local government to take further civil, administrative, or regulatory action against the defendant, including but not limited to any listing and debarment proceedings to restrict rights and opportunities of the defendant to contract with or receive assistance, loans, and benefits from United States government agencies.

## GENERAL MATTERS

35. The parties acknowledge, understand, and agree that this agreement does not require the government to take, or not to take, any particular position in any post-conviction motion or appeal.

36. The parties acknowledge, understand, and agree that this plea agreement will be filed and become part of the public record in this case.

37. The parties acknowledge, understand, and agree that the United States Attorney's office is free to notify any local, state, or federal agency of the defendant's conviction.

38. The defendant understands that pursuant to the Victim and Witness Protection Act, the Justice for All Act, and regulations promulgated thereto by the Attorney General of the United States, the victim of a crime may make a statement describing the impact of the offense on the victim and further may make a recommendation regarding the sentence to be imposed. The defendant acknowledges and understands that comments and recommendations by a victim may be different from those of the parties to this agreement.

39. The parties acknowledge, understand, and agree that the United States Attorney's office agrees not to bring any additional charges based on any information currently known to the government.

**Further Action by Internal Revenue Service**

40. Nothing in this agreement shall be construed so as to limit the Internal Revenue Service in discharging its responsibilities in connection with the collection of any additional tax, interest, and penalties due from the defendant as a result of the defendant's conduct giving rise to the charges alleged in the information.

41. The defendant agrees to transmit his original records, or copies thereof, to the Examination Division of the Internal Revenue Service so that the Examination Division of the Internal Revenue Service can complete its civil audit of the defendant. The defendant agrees to provide any additional books and records of his which may be helpful to the Examination Division of the Internal Revenue Service to complete its civil audit of defendant.

**EFFECT OF DEFENDANT'S BREACH OF PLEA AGREEMENT**

42. The defendant acknowledges and understands if he violates any term of this agreement at any time, engages in any further criminal activity prior to sentencing, or fails to

14

appear for sentencing, this agreement shall become null and void at the discretion of the government. The defendant further acknowledges and understands that the government's agreement to dismiss any charge is conditional upon final resolution of this matter. If this plea agreement is revoked or if the defendant's conviction ultimately is overturned, then the government retains the right to reinstate any and all dismissed charges and to file any and all charges which were not filed because of this agreement. The defendant hereby knowingly and voluntarily waives any defense based on the applicable statute of limitations for any charges filed against the defendant as a result of his breach of this agreement. The defendant understands, however, that the government may elect to proceed with the guilty plea and sentencing. If the defendant and his attorney have signed a proffer letter in connection with this case, then the defendant further acknowledges and understands that he continues to be subject to the terms of the proffer letter.

## VOLUNTARINESS OF DEFENDANT'S PLEA

43. The defendant acknowledges, understands, and agrees that he will plead guilty freely and voluntarily because he is in fact guilty. The defendant further acknowledges and agrees that no threats, promises, representations, or other inducements have been made, nor agreements reached, other than those set forth in this agreement, to induce the defendant to plead guilty.

## ACKNOWLEDGMENTS

I am the defendant. I am entering into this plea agreement freely and voluntarily. I am not now on or under the influence of any drug, medication, alcohol, or other intoxicant or depressant, whether or not prescribed by a physician, which would impair my ability to understand the terms and conditions of this agreement. My attorney has reviewed every part of this agreement with me and has advised me of the implications of the sentencing guidelines. I have discussed all aspects of this case with my attorney and I am satisfied that my attorney has provided effective assistance of counsel.

Date: 7/8/24

DAVID O. BRAEGER
Defendant

I am the defendant's attorney. I carefully have reviewed every part of this agreement with the defendant. To my knowledge, my client's decision to enter into this agreement is an informed and voluntary one.

Date: 7/9/24

CRAIG ALBEE
DENNISE MORENO
Attorney for Defendant

For the United States of America:

Date: 7/9/2024

GREGORY J. HAANSTAD
United States Attorney

Date: 7/9/2024

JULIE F. STEWART
ZACHARY J. COREY
Assistant United States Attorney

16